**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

      V.                                    06-CR-356

**RAMATULAI BARRY,**

                             **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

Defendant Ramatulai Barry was indicted for false personation, misuse of a passport, and false use of a passport in violation of 18 U.S.C. §§ 1546(a), 1544 and 1543. See Indictment No. 06-CR-356 (N.D.N.Y.) [dkt. # 1]. She moves for an order dismissing the Indictment without prejudice on the grounds that her prosecution violates her rights under the due process clauses of the Fifth Amendment and Fourteenth Amendment to the United States Constitution. She concedes, however, that "[t]he same issue was addressed in, United States v Linda Adeline Malenge, 06-CR-70, N.D.N.Y. The Honorable Judge Gary Sharpe denied the relief sought in his Decision and Order dated February 8, 2007, docket entry # 36." Def. Mem. L. p. 1, fn. 1. The Government has opposed the motion.

## II.  DISCUSSION

> Like in United States v. Malenge, Defendant
>
> argues that the indictment must be dismissed because her Fifth and Fourteenth Amendment Due Process rights were violated when the government elected to prosecute her.  Her conclusion rests on the following postulates. As a signatory to the Treaty on Refugees, the United States must comply with Treaty obligations regarding those seeking asylum in America. Those obligations require signatories to decline criminal prosecution of refugees who use false documents to gain entry. The United States Attorney is a component of the Executive Branch, and his authority to prosecute is limited by the requirement that he obey treaty obligations. When [Defendant] entered the United States, she presented false documents but was seeking political asylum. Thus, the United States Attorney's decision to prosecute exceeds his authority and violates [Defendant's] Due Process rights.

United States v. Malenge, --- F. Supp.2d ----, 2007 WL 332677, at * 1 (N.D.N.Y. Fed. 6, 2007).

For the reasons set forth by Judge Sharpe in Malenge, the instant motion must be denied because "as a matter of fact, there was no violation of treaty obligations or other substantive provisions of U.S. immigration law."  Id.   Here, like in Malenge, upon Defendant's attempted entry into the United States from Canada, she presented United States Department of Homeland Security, Customs and Border Protection agents with a knowingly false and altered passport, and repeatedly indicated falsely that her name was other than her own (telling officials that her name was that of the person on the passport). See Barry Decl. ¶¶ 17, 19-20.  Only after being handcuffed to a bench and told by Customs and Border Patrol agents for the second time that they did not believe that the name she had given was her real name did Defendant divulge her true identity.  Id. at ¶ 20.  It was at this time that Defendant asserts that she "recall[s] telling [the Border agent] that I had a fear of returning to my country of Guinea."  Id.  A memorandum written by the

2

Customs and Border Protection agent to whom Defendant made her admissions states:

> When asked why she presented the Canadian document and made false and misleading statements during inspection, Ms. Barry explained that she was aware of the visa requirement for lawful admission to the United States and that she attempted to use the document to come to the United States to look for her husband and to apply for protection/asylum once in New York City.

Def. Reply, Ex. B.

As distilled by Judge Sharpe, Article 31(1) of the Refugee Treaty (the treaty in issue here and in Malenge) provides that the United States Government is "free to prosecute when refugees illegally enter either from a country in which they have settled following their exodus from the country of persecution, or when they fail to immediately notify authorities that they are seeking asylum and explain their illicit entry. Nothing in the Treaty itself precludes prosecution for the use of false documents, including passports." Malenge, 2007 WL 332677, at * 4.  The facts in the instant case reflect, as they did in Malenge, that Defendant "did not immediately notify authorities that she was seeking asylum and arguably, she had settled in Canada before attempting entry into the United States." Id.

> When [Defendant] arrived at [the Champlain Port of Entry], she was deemed to have arrived in the United States, and she was an applicant for admission. See 8 U.S.C. § 1225(a)(1). Therefore, she was required to undergo inspection. See 8 U.S.C. § 1225(a)(3). During inspection, it was determined that she was inadmissible because she had, *inter alia,* presented a false passport. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). At that point, the immigration authorities had essentially three options: return [Defendant] to Canada immediately without further hearing or review, see 8 U.S.C. § 1225(b)(1)(A)(i); arrest and detain her pending a removal decision, see 8 U.S.C. § 1226(a); or, proceed as they did by arresting her for a criminal offense, see Fed. R. Crim. P.  5(b).

Malenge, 2007 WL 332677, at * 6.

3

"When [Defendant] was detained at the U.S. border for initial inspection and screening, she could have applied for asylum. See 8 U.S.C. § 1225(b)(1)(A)(ii)." Id.  She did not do so immediately and revealed her intentions to seek asylum only after her attempt to illegally enter the country was discovered.  While the Court has no reason to doubt that she would have applied for asylum at some future time had her illegal attempt to enter the county not been discovered, the possibility exists that she would not have done so had she not been caught and, once in the country, would have remained here indefinitely without the knowledge of the immigration officials.  Because the facts, even as recounted by Defendant, indicate that Defendant committed criminal acts upon her attempted entry into the country and divulged her intention to seek asylum only after her repeated unsuccessful attempts to avoid detection clearly proved fruitless, the Government has a legitimate basis to proceed with the prosecution.

> As an unlawful alien present in the United States, she may still apply for asylum. See 8 U.S.C. § 1158(a)(1).  Even though criminal proceedings have begun, there is no legal impediment that precludes an asylum application. If the facts asserted by [Defendant] are sufficiently credible to warrant her justified fear of persecution by [Guinean] officials, she has a viable claim, regardless of her current status. See id. If she succeeds in satisfying immigration officials that she meets the statutory definition of refugee because of past persecution, she may be automatically eligible for asylum. See id. at § 1101(a)(42); see also Huang v. I.N.S., 436 F.3d 89, 94-95 (2d Cir. 2006). Furthermore, when officials consider her asylum application, they may not deny it simply because she used false travel documents. See Lin v. Gonzales, 445 F.3d 127, 133-34 (2d Cir. 2006). So too, whether a successful asylum application is precluded because [Defendant] had firmly resettled in Canada or some other country is also subject to judicial review. See, e.g., Makadji v. Gonzales, 470 F.3d 450 (2d Cir. 2007). In short, the court cannot find, nor has [Defendant] cited, any authority that supports the relief she seeks, namely, dismissal of the indictment. Furthermore, equity does not support her position.  Her criminal prosecution does not prevent her from seeking asylum, and despite her concerns, she has cited no authority suggesting that prosecution will diminish the success of an asylum application. Ultimately, she must satisfy immigration authorities that she truly

fears persecution, and that decision is subject to judicial review.

Id.

### III. CONCLUSION

For the reasons stated, it is hereby

**ORDERED** that Defendant's motion to dismiss the indictment is **DENIED**. To the extent to the Government argues in opposition to the pending motion that Defendant should be precluded at trial from raising her past persecution as reason, excuse, or justification for her entry into the United States in the manner alleged, the issue will have to await trial. The Government should raise the issue in a properly noticed *in limine* motion.

**IT IS SO ORDERED**.

DATED:April 6, 2007

Thomas J. McAvoy
Senior, U.S. District Judge